CHRISTOPHER R. LIPSETT (*pro hac vice*)
WILLIAM J. KOLASKY (*pro hac vice*)
NOAH A. LEVINE (*pro hac vice*)
GILAD OHANA (SBN 202461)
KELLY THOMPSON COCHRAN (*pro hac vice*)
ANDREW J. EWALT (*pro hac vice*)
ANNA T. LEE (SBN 244691)
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1117 California Avenue
Palo Alto, CA 94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100
Christopher.Lipsett@wilmerhale.com

Attorneys for Defendants
CHASE BANK USA, N.A. and
JP MORGAN CHASE & CO.

*(Additional Parties and Counsel listed on signature page.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DISTRICT

| | |
|---|---|
| In re LATE FEE and OVER-LIMIT FEE LITIGATION<br><br>This Document Relates To:<br>    ALL ACTIONS. | Civil Action No. C-07-0634 SBA<br><br><u>CLASS ACTION</u><br><br>**STATEMENT OF RECENT DECISION**<br><br>DATE:  October 23, 2007<br>TIME:   1:00 p.m.<br>COURTROOM:  Courtroom 3, 3rd Floor<br>JUDGE:  Hon. Saundra Brown Armstrong |

Pursuant to Civil Local Rule 7-3(d), Defendants respectfully submit the attached recent decision in *In re Elevator Antitrust Litigation*, --- F.3d ---, 2007 WL 2471805 (2d Cir. Sept. 4, 2007). The decision is relevant to the issues raised in Part II (pp. 12-22) of Defendants' Joint Motion to Dismiss the Consolidated Complaint [Dkt. #91].

Respectfully submitted,

Dated: September 19, 2007

CHRISTOPHER R. LIPSETT
WILLIAM J. KOLASKY
NOAH A. LEVINE
GILAD OHANA (SBN 202461)
KELLY THOMPSON COCHRAN
ANDREW J. EWALT
ANNA T. LEE (SBN 244691)
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1117 California Avenue
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100


By: /s/ Noah A. Levine
        NOAH A. LEVINE
Attorneys for Defendants
CHASE BANK USA, N.A. and
JP MORGAN CHASE & CO.

Dated: September 19, 2007

BRIAN P. BROSNAHAN
JONATHAN P. HAYDEN
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268


By: /s/ Brian P. Brosnahan
        BRIAN P. BROSNAHAN
Attorneys for Defendants
WASHINGTON MUTUAL BANK and
WASHINGTON MUTUAL, INC.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: September 19, 2007 | MARK P. LADNER<br>JAMES F. McCABE<br>STUART C. PLUNKETT<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile: (415) 268-7522 |

Dated: September 19, 2007

MARK P. LADNER
JAMES F. McCABE
STUART C. PLUNKETT
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

By: /s/ James F. McCabe
      JAMES F. McCABE
Attorneys for Defendants
BANK OF AMERICA, N.A. and
BANK OF AMERICA CORP.

Dated: September 19, 2007

ANDREW J. FRACKMAN
MICHAEL F. TUBACH
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3344
Telephone: (415) 984-8876
Facsimile: (415) 984-8701

By: /s/ Michael F. Tubach
      MICHAEL F. TUBACH
Attorneys for Defendant
CAPITAL ONE FINANCIAL CORP.

Dated: September 19, 2007

DAVID F. GRAHAM
ERIC H. GRUSH
ROBERT T. SCARBOROUGH
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104-1715
Telephone: (415) 772-1292
Facsimile: (415) 772-7400

By: /s/ David F. Graham
      DAVID F. GRAHAM
Attorneys for Defendants
CITIBANK (SOUTH DAKOTA), N.A. and
CITIGROUP INC

STATEMENT OF RECENT DECISION
CASE NO.: C-07-0634 SBA

- 3 -

Dated: September 19, 2007

SONYA D. WINNER
ANITA F. STORK
DAVID M. JOLLEY
COVINGTON & BURLING LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091


By: /s/ Sonya D. Winner
      SONYA D. WINNER
   Attorneys for Defendant
   WELLS FARGO & COMPANY

**Westlaw.**

--- F.3d ----  Page 1
--- F.3d ----, 2007 WL 2471805 (C.A.2 (N.Y.))
**(Cite as: --- F.3d ----)**

In re Elevator Antitrust Litigation
C.A.2 (N.Y.),2007.
Only the Westlaw citation is currently available.
United States Court of Appeals,Second Circuit.
In re ELEVATOR ANTITRUST LITIGATION.
Transhorn, Ltd., 1775 Housing Associates, Rochdale Village, Inc., Birmingham Building Trades Towers, Inc., Triangle Housing Associates, L.P., Bay Crest Condominium Association, Olen Commercial Realty Corp., Riverbay Corp., 181 Maple Avenue Associates, D.F. Chase, Inc., Lenox Road Associates and Towers of Coral Springs Ltd., Plaintiffs-Appellants,
Joseph M. Bennardi, doing business as Building Supers of Camden, Inc., doing business as Nedmac Management, Inc., Consolidated-Plaintiff-Appellant,
v.
United Technologies Corporation, Otis Elevator Company, Kone Corporation, Kone, Inc., Schindler Holding, Ltd., Schindler Elevator Corporation, Thyssenkrupp AG, Thyssenkrupp Elevator Capital Corp., and Thyssenkrupp Elevator Corp., Defendants-Appellees.
**Docket No. 06-3128-CV.**

Argued: June 14, 2007.
Decided: Sept. 4, 2007.

Appeal from a judgment entered by the United States District Court for the Southern District of New York (Griesa, J.) on June 6, 2006, granting defendants-appellees' motion to dismiss the complaint and denying leave to replead. We affirm.

Eric Alan Isaacson (Mark Solomon, Christopher M. Burke, David W. Mitchell, Tami Falkenstein Hennick, on the brief), Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP, San Diego, CA, for Plaintiffs-Appellants.
Mary Jane Fait, Wolf Haldenstein Adler Freeman & Herz, LLP, New York, NY, for Plaintiffs-Appellants.
Nadeem Faruqi, Antonio Vozzolo, Beth A. Keller, Faruqi & Faruqi, LLP, New York, NY, for Plaintiffs-Appellants.
Mark Leddy (Leah Brannon, on the brief), Cleary Gottlieb Steen & Hamilton, LLP, Washington, DC, for Defendants-Appellees United Technologies Corporation and Otis Elevator Company.

Kenneth M. Kramer (Jerome S. Fortinsky, Paula Howell, on the brief), Shearman & Sterling LLP, New York, NY, for Defendants-Appellees Schindler Holding Ltd. and Schindler Elevator Corporation.
Gerald Zingone (Michael Evan Jaffe, on the brief), Thelen Reid Brown Raysman & Steiner LLP, Washington, DC, for Defendants-Appellees Kone Corporation and Kone, Inc.
Terry Myers (Anthony A. Dean, on the brief), Gibbons Del Deo, Dolan, Griffinger & Vecchione, P.C., New York, NY, for Defendant-Appellee ThyssenKrupp AG.
Scott Martin (Christopher V. Roberts, on the brief), Weil Gotshal & Manges LLP, New York, NY, for Defendants-Appellees Thyssenkrupp Elevator Capital Corp., and Thyssenkrupp Elevator Corp.
A. Paul Victor, Dewey Ballantine LLP, New York, NY, for Defendants-Appellees Thyssenkrupp Elevator Capital Corp., and Thyssenkrupp Elevator Corp.

Before JACOBS, Chief Judge, STRAUB and B.D. PARKER, Circuit Judges.
PER CURIAM:
**\*1** This appeal is taken from a judgment of the United States District Court for the Southern District of New York (Griesa, J.), dismissing a complaint alleging that defendant elevator companies conspired to engage in anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1 *et seq.* (the "conspiracy claims"), and that they unilaterally monopolized and attempted to monopolize the maintenance market for their elevators, in violation of Section 2 of the Sherman Act (the "unilateral-monopolization claims"). We affirm. The conspiracy claims provide no plausible ground to support the inference of an unlawful agreement, and the allegations of unilateral monopolization fail to allege a prior course of dealing. Finally, the district court did not abuse its discretion by refusing leave to amend the complaint.

Plaintiffs represent a putative class of persons who "purchased elevators and/or elevator maintenance and repair services from defendants," sellers of elevators and maintenance services.[FN1] 2d Am. Compl. ¶¶ 5, 20-28. The complaint alleges that:

FN1. Defendants are: United Technologies

--- F.3d ---- Page 2
--- F.3d ----, 2007 WL 2471805 (C.A.2 (N.Y.))

**(Cite as: --- F.3d ----)**

Corporation and Otis Elevator Company (collectively " Otis" ); Kone Corporation and Kone, Inc. (collectively " Kone" ); Schindler Holding Ltd. and Schindler Elevator Corporation (collectively " Schindler" ); ThyssenKrupp AG, ThyssenKrupp Elevator Corporation, and ThyssenKrupp Elevator Capital Corporation (collectively " Thyssen" ).

(1) Defendants conspired to fix prices for the sale and the continuing maintenance of elevators, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count I);
(2) Defendants conspired to monopolize the markets for the sale and maintenance of elevators, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (Count II); and
(3) Each defendant unilaterally monopolized and attempted to monopolize the maintenance market for its own elevators by making it difficult for independent maintenance companies (and each other) to service each defendant's elevators, in violation of Section 2 of the Sherman Act (Counts III-X).<sup>FN2</sup>

> FN2. Counts III and IV are against Otis, V and VI, Kone; VII and VIII, Schindler; and IX and X, Thyssen.

As to the conspiracy claims, plaintiffs allege that, beginning in 2000, defendants agreed:
to suppress and eliminate competition in the sale and service of elevators by fixing the price of elevators [and] replacement parts and services, rigging bids for contracts for elevator sales, allocating markets and customers for elevator sales and maintenance services, and rigging bids for contracts for elevator maintenance and repair services.

2d Am. Compl. ¶ 41. Plaintiffs assert that the conspiracy was undertaken (and its effects felt) in Europe as well as in the United States, and that the conspiracy was effected by price fixing, bid rigging, and collusion to drive independent repair companies out of business.2d Am. Compl. ¶¶ 41-43. The complaint references various investigations into alleged antitrust violations by defendants and their affiliates, one in Italy (1998) and another by the European Commission (2004).2d Am. Compl. ¶¶ 62-69.

As to the unilateral-monopolization claims, plaintiffs assert that each defendant monopolized the maintenance market for its own elevators by such measures as interfering with delivery of replacement parts and intentionally designing their elevators to require proprietary maintenance tools which are not made available to competing service companies (*e.g.,* embedded computer systems that can only be interfaced with defendant-controlled handheld units). 2d Am. Compl. ¶¶ 50-57.

**\*2** The district court granted defendants' Rule 12(b)(6) motion to dismiss on the ground that the claims lacked the requisite factual predicate. *In re Elevator Antitrust Litig.,* No. 04 Civ. 1178, 2006 WL 1470994 (S.D.N.Y. May 30, 2006). The court denied leave to re-plead and entered judgment in favor of defendants. *Id.* at \*12. This appeal followed.

We review the district court's grant of a Rule 12(b)(6) motion *de novo, see In re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 200 (2d Cir.2006), *cert. denied,*127 S.Ct. 3001 (2007), " draw[ing] all reasonable inferences in plaintiffs' favor," *Freedom Holdings Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004) and accepting as true all the factual allegations in the complaint, *see Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007).

We affirm the district court's dismissal of the conspiracy claims because plaintiffs are unable to allege facts that would provide " plausible grounds to infer an agreement," *Bell Atlantic Corp. v.. Twombly,* 127 S.Ct. 1955, 1965 (2007). " Considerable uncertainty" surrounds the breadth of the Supreme Court's recent decision in *Twombly.Iqbal v. Hasty,* 490 F.3d 143, 155 (2d Cir.2007). But we need not draw fine lines here; our precedents support application of *Twombly* to the conspiracy claims asserted under both Section 1 and Section 2.<sup>FN3</sup> To survive a motion to dismiss under *Twombly,* it is not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement; to be viable, a complaint must contain " enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made." *Twombly,* 127 S.Ct. at 1965 (citation and internal quotation marks omitted). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to " nudge[plaintiffs'] claims across the line from conceivable to plausible." <sup>FN4</sup>*Twombly,* 127 S.Ct. at 1974.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                Page 3

--- F.3d ----, 2007 WL 2471805 (C.A.2 (N.Y.))

**(Cite as: --- F.3d ----)**

FN3. A narrow view of *Twombly* would have limited its holding to the antitrust context, or perhaps only to Section 1 claims; but we have concluded that *Twombly* affects pleading standards somewhat more broadly. See *Iqbal,* 490 F.3d at 157 (" We are reluctant to assume that all of the language of *Bell Atlantic [v. Twombly]* applies only to section 1 allegations based on competitors' parallel conduct or, slightly more broadly, only to antitrust cases." ); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* --- F.3d ----, No. 05-5132, 2007 WL 1989336, at *15 n. 2 (2d Cir. July 11, 2007) (" We have declined to read *Twombly's* flexible ' plausibility standard' as relating only to antitrust cases." (citing *Iqbal,* 2007 WL 1717803, at * 11)).

FN4. The potentially enormous cost of fact discovery was cited as a factor in *Twombly;* the Court explained that, while judges should " be cautious before dismissing an antitrust complaint in advance of discovery," they must also keep in mind that " proceeding to antitrust discovery can be expensive." *Id.* at 1966-67.Accordingly, district courts " ' retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.' " *Id.* at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 528 n. 17 (1983)).

Plaintiffs argue that a plausible inference can be drawn from three sources in the complaint: [A] averments of agreements made at some unidentified place and time; [B] averments of parallel conduct; and [C] evidence suggesting anticompetitive wrongdoing by certain defendants in Europe. These allegations are insufficient to establish a plausible inference of agreement, and therefore to state a claim.

[A] *Conclusory Allegations of Agreement.*As the district court observed, the complaint enumerates " basically every type of conspiratorial activity that one could imagine .... The list is in entirely general terms without any specification of any particular activities by any particular defendant[; it] is nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever." [FN5]*In re Elevator Antitrust Litig.,* 2006 WL 1470994, at *2-*3 (citing 2d Am. Compl. ¶¶ 43, 78, 85). Such " conclusory allegation[s] of agreement at some unidentified point do [ ] not supply facts adequate to show illegality." *Twombly,* 127 S.Ct. at 1966;*cf. Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338, 344 (2d Cir.2006) (concluding that, in resisting a motion to dismiss, " bald assertions and conclusions of law will not suffice" ).

FN5. Specifically, plaintiffs assert that, in order to effect the conspiracy, defendants:
(a) Participated in meetings in the United States and Europe to discuss pricing and market divisions;
(b) Agreed to fix prices for elevators and services;
(c) Rigged bids for sales and maintenance;
(d) Exchanged price quotes;
(e) Allocated markets for sales and maintenance;
(f) " Collusively" required customers to enter long-term maintenance contracts; and
(g) Collectively took actions to drive independent repair companies out of business.
2d Am. Compl. ¶ 43.

**\*3** [B] *Parallel Conduct.*Plaintiffs argue that certain parallel conduct evinces a conspiracy, such as similarities in contractual language, pricing, and equipment design.2d Am. Compl. ¶¶ 41-42, 61-70. But these allegations do not constitute " plausible grounds to infer an agreement" because, while that conduct is " consistent with conspiracy, [it is] just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly,* 127 S.Ct. at 1964. Similar contract terms can reflect similar bargaining power and commercial goals (not to mention boilerplate); similar contract language can reflect the copying of documents that may not be secret; similar pricing can suggest competition at least as plausibly as it can suggest anticompetitive conspiracy; and similar equipment design can reflect the state of the art. " An allegation of parallel conduct ... gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1966 (internal quotation marks omitted).

[C] *European Misconduct.*Plaintiffs assert that the conspiracy claims are rendered plausible by specific factual allegations of defendants' apparent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---- Page 4

--- F.3d ----, 2007 WL 2471805 (C.A.2 (N.Y.))

**(Cite as: --- F.3d ----)**

anticompetitive misconduct in Europe. (The particulars are set out in the margin.[FN6]) The European misconduct is alleged to reflect the existence of a worldwide conspiracy; and even if the misconduct took place only in Europe, it is alleged that the market in elevators is a " global market, such that prices charged in the European market affect the prices in the United States and vice versa." [FN7] 2d Am. Compl. ¶ 61.

> FN6. Plaintiffs allege: that the Italian Antitrust Authority and the European Commission have initiated investigations into possible wrongdoing by the defendants, 2d Am. Compl. ¶¶ 62-66; that the European Commission raided the offices of each defendant and issued a statement that it " has good reason to believe that the manufacturers [including ... Kone Corporation, Schindler Holding, and ThyssenKrupp AG] may have shared between themselves the tenders for sale & installation of elevators ... and may have colluded to restrict competition with regard to after-sales services, 2d Am. Compl. ¶ 66; that news reports claim that UTC and Kone Corporation have admitted wrongdoing by some of its European employees, 2d Am. Compl. ¶¶ 67-69; and that (subsequent to the filing of the complaint) extraordinary fines have been levied by the European Commission against defendants and their affiliates for various antitrust violations. **[Pl. Ltr. Br. (June 6, 2007) at 3].**

> FN7. Plaintiffs allege: that the " effects [of defendants' conspiracy] were felt by plaintiffs ... in the United States," that " the prices charged in the European market affect the prices in the United States and vice versa," and that pricing in Europe and the United States is " intertwined."

Plaintiffs provide an insufficient factual basis for their assertions of a worldwide conspiracy affecting a global market for elevators and maintenance services. Allegations of anticompetitive wrongdoing in Europe-absent any evidence of linkage between such foreign conduct and conduct here-is merely to suggest (in defendants' words) that " if it happened there, it could have happened here." And, regarding the nature of the elevator market, plaintiffs offer nothing more than conclusory allegations: for example, there are no allegations of global marketing or fungible products, see *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.,* 417 F.3d 1267, 1270 (D.C.Cir.2005), no indication that participants monitored prices in other markets, see *Dee-K Enters., Inc. v. Heveafil Sdn. Bhd,* 299 F.3d 281, 295 (4th Cir.2002), and no allegations of the actual pricing of elevators or maintenance services in the United States or changes therein attributable to defendants' alleged misconduct. See generally *Todd v. Exxon Corp.,* 275 F.3d 191, 200 (2d Cir.2001) (" To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes-analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible." (citations and internal quotation marks omitted)). Without an adequate allegation of facts linking transactions in Europe to transactions and effects here, plaintiffs' conclusory allegations do not " nudge[ their] claims across the line from conceivable to plausible." [FN8]*Twombly,* 127 S.Ct. at 1974.

> FN8. Because the pleadings do not state a claim, we need not consider the extra-territorial reach of the Sherman Act. See *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 796 (1993) (" [T]he Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States." ).

**\*4** It is also alleged that each defendant unilaterally employed " exclusionary conduct" to acquire and attempt to acquire a monopoly in the maintenance market for its own elevators, such as: designing the elevators to prevent servicing by other providers (including each other); refusing to sell competitors the parts, tools, software or diagrams necessary to service the elevators; and obstructing competitors' attempts to purchase elevator parts.2d Am. Compl. ¶¶ 51-58. Thus, plaintiffs contend that defendants' refusal to deal with third-party maintenance providers violates Section 2 of the Sherman Act.2d Am. Compl. ¶¶ 89, 94, 100, 106, 112, 118, 124, 130. But because plaintiffs do not allege that defendants terminated any prior course of dealing-the sole exception to the broad right of a firm to refuse to deal with its competitors-the allegations are insufficient to state a unilateral-monopolization claim.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                                                          Page 5
--- F.3d ----, 2007 WL 2471805 (C.A.2 (N.Y.))

**(Cite as: --- F.3d ----)**

In *Verizon Commc'ns v. Trinko,* 540 U.S. 398 (2004), the Supreme Court explained that a refusal to deal with competitors does not typically violate § 2:

Firms may acquire monopoly power by establishing an infrastructure that renders them uniquely suited to serve their customers. Compelling such firms to share the source of their advantage is in some tension with the underlying purpose of antitrust law.... [C]ompelling negotiation between competitors may facilitate the supreme evil of antitrust: collusion. Thus, as a general matter, the Sherman Act " does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal."

*Id.* at 407-08 (quoting *United States v. Colgate & Co.,* 250 U.S. 300, 307 (1919)); *see also MetroNet Servs. Corp. v. Qwest Corp.,* 383 F.3d 1124, 1131 (9th Cir.2004). Here, obvious commercial interests would justify a competitor in assuring its own control over the maintenance of the elevators it markets, because maintenance is important in upholding the product's reputation for reliability and safety (no small considerations when it comes to elevators).

*Trinko* cautioned that the right to refuse to deal, while capacious, is not unlimited: " ' The high value that we have placed on the right to refuse to deal with other firms does not mean that the right is unqualified.' " 540 U.S. at 408 (quoting *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 601 (1985)). Observing that it has been " very cautious" in creating exceptions to the right to refuse to deal, the *Trinko* Court noted a sole exception, set forth in the earlier case of *Aspen Skiing,* which *Trinko* described as situated " at or near the outer boundary of § 2 liability." *Id.* at 409.That exception applies when a monopolist seeks to terminate a prior (voluntary) course of dealing with a competitor. *Id.* (observing that " [t]he refusal to deal alleged in the present case does not fit within the limited exception recognized in *Aspen Skiing.*The complaint does not allege that Verizon voluntarily engaged in a course of dealing with its rivals...." ). The *Trinko* Court explained the relevance of a prior course of dealing in antitrust analysis: " The unilateral termination of a voluntary (*and thus presumably profitable* ) course of dealing suggested a willingness to forsake short-term profits to achieve an anticompetitive end." *Id.* (emphasis in original).

**\*5** Plaintiffs argue that *Trinko* only applies where there is a " pervasive regulatory scheme," which diminishes the likelihood of antitrust harm. In arriving at its holding, *Trinko* did address the telecommunications regulatory scheme, along with at least two other considerations, which militated against creating further exceptions to the right of refusal to deal.*Id.* at 412-14.But these considerations were not essential to *Trinko's* holding. And neither of two other Supreme Court cases dealing with this exception involves a regulated industry. *See Aspen Skiing,* 472 U.S. at 587 (ski resorts); *Eastman Kodak Co. v. Image Technical Servs.,* 504 U.S. 451 (1992) (photocopiers).

The limited nature of this exception to the right of refusal to deal is further supported by *Eastman Kodak.*After five years working with independent service organizations (" ISOs" ) to provide maintenance services on Kodak copiers, Kodak suddenly implemented a policy of refusing to do business with the ISOs; as a result, " ISOs were unable to obtain parts ... and many were forced out of business." *Id.* at 458.The Court concluded that " [i]f Kodak adopted its [refusal to deal] policies as part of a scheme of willful acquisition or maintenance of monopoly power, it will have violated § 2." *Id.* at 483.While *Eastman Kodak* does not expressly say that a Section 2 claim premised on a refusal to deal cannot survive absent a prior course of dealing, it was decided in that fact context, and has been read to support that proposition:

[Initially,] Kodak sold copiers that customers could service themselves (or through independent service organizations). Having achieved substantial sales, Kodak then moved to claim all of the repair work for itself. That change had the potential to raise the total cost of copier-plus-service above the competitive level-and ... above the price that Kodak could have charged had it followed a closed-service model from the outset.

*Schor v. Abbott Labs.,* 457 F.3d 608, 614 (7th Cir.2006), *cert. denied,*127 S.Ct. 1257 (2007).

The unilateral-monopolization claims in this case do not fall within the sole exception to the right of refusalto-deal: the complaint does not allege that defendants terminated a prior relationship with elevator service providers-a change which (by taking advantage of their customers' sunk costs) could evince monopolistic motives.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  Page 6
--- F.3d ----, 2007 WL 2471805 (C.A.2 (N.Y.))
**(Cite as: --- F.3d ----)**

We review a district court's denial of a motion to amend for abuse of discretion. *See Gorman v. Consol. Edison Corp.,* 488 F.3d 586, 592 (2d Cir.2007). The district court concluded that plaintiffs' second amended complaint (at issue here) contains as much specificity as plaintiffs can muster consistent with Federal Rule of Civil Procedure 11.[FN9] *In re Elevator Antitrust Litig.,* No. 04 Civ. 1178, 2006 WL 1470994, at *12 (S.D.N.Y. May 30, 2006). Based on the record before us, we cannot say that this conclusion falls outside the district court's discretion.

> FN9. At argument in district court, an attorney for plaintiffs suggested that she knew of facts supporting more specific allegations of misconduct in the United States; but when pressed as to the substance of those facts, or for an explanation for why they don't appear in the complaint, she replied: " Your honor, I really don't feel at liberty to [disclose the information]. It is confidential."

\* \* \*

**\*6** Plaintiffs' remaining arguments are less substantial and without merit. The judgment of the district court is affirmed.

C.A.2 (N.Y.),2007.
In re Elevator Antitrust Litigation
--- F.3d ----, 2007 WL 2471805 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 19, 2007             /s/ ANNA T. LEE
                                            ANNA T. LEE

                                      WILMER CUTLER PICKERING HALE
                                            AND DORR LLP
                                      1117 California Avenue
                                      Palo Alto, CA 94304
                                      Telephone: (650) 858-6000
                                      Facsimile: (650) 858-6100
                                      E-mail: Anna.Lee@wilmerhale.com

STATEMENT OF RECENT DECISION
CASE NO.: C-07-0634 SBA